**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230620-U

Order filed January 25, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0620 Circuit No. 18-CF-71 |
| | ) | |
| KEVIN D. JAMES, | ) ) | Honorable Ann Celine O'Hallaren Walsh, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ALBRECHT delivered the judgment of the court.
Justice Hettel concurred in the judgment.
Presiding Justice McDade dissented.

**ORDER**

¶ 1     *Held*:   The circuit court did not err when it granted the State's motion to deny pretrial release.

¶ 2     On January 11, 2018, defendant, Kevin D. James, was charged with first degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2018)). His bond was set at $3 million, but he remained in custody. He was later indicted on five counts of first degree murder. On September 26, 2023, defendant filed a motion seeking pretrial release. In response, the State filed a verified petition to

deny pretrial release, alleging defendant was charged with a forcible felony and his release posed a real and present threat to the safety of any person, persons, or the community under section 110-6.1(a)(1.5) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1(a)(1.5) (West 2022)). After a hearing, the circuit court granted the State's petition to detain, and defendant appealed. We affirm.

¶ 3                                  I. BACKGROUND

¶ 4        The factual basis for the State's petition provided that officers received a call from Kiera James stating that her brother, defendant, had just killed their mother, Patricia James. Kiera stated that she, defendant, and Patricia were at the family home. Kiera was upstairs when she heard a disturbance on the first floor. She went downstairs and saw defendant on top of Patricia, choking her. Kiera tried to stop defendant, but defendant punched her. Kiera went outside to call 911 when she heard a loud scream. She went back inside and saw defendant repeatedly stabbing the victim. Kiera ran from the home, and defendant followed her, carrying the knife. Kiera ran to a local business and called the police. Defendant fled the scene. When police arrived at the home, they found defendant inside. He had blood on his pants and ultimately admitted to stabbing his mother. Patricia was taken to hospital where she was pronounced dead as a result of multiple stab wounds, one piercing her heart.

¶ 5        At the time of his arrest, defendant had charges pending for battery and mob action from June 2020 based on an altercation at the jail. Defendant also had a series of disciplinary actions while in the Du Page County jail from September 2018 through August 2023, including for (1) giving another inmate his personal identification number (PIN) to make phone calls and lying to deputies about it; (2) entering another inmates cell, refusing to leave, and disorderly conduct; (3) possession of contraband, theft, entering another inmate's cell, and disobeying orders; (4)

2

disobeying orders, threatening to harm another inmate, and disorderly conduct; (5) fighting and disorderly conduct; (6) fighting and disobeying orders; (7) fighting, entering the cell of another, and disobeying orders; (8) fighting, disorderly conduct, and disobeying orders; (9) possession of contraband; (10) fighting, disorderly conduct, and disobeying orders; and (11) disobeying orders and threatening or intimidating a deputy.

¶ 6    A hearing was held on October 26, 2023. A number of defense exhibits were entered into evidence, including a mailing from defendant to the court that included a letter stating he found God while in jail and had plans to start a business, a letter and certificates indicating defendant had participated in over 700 hours of classes in the jail, character letters from relatives and friends, and a book that he helped publish and market at the jail. Defense counsel stated that if defendant was released, he would be able to reside with his brother in Downers Grove. Counsel argued that the number of incidents in the jail had decreased, and defendant had only had two altercations in 2023.

¶ 7    The State provided the factual basis and noted that defendant had multiple incidents of violence in the jail, one of which resulted in additional charges and an inmate being taken to the hospital. The State indicated that, while defendant completed anger management in 2021, he continued to be aggressive and hostile towards deputies and other inmates. After a hearing, the court granted the State's petition finding that the State met its burden by clear and convincing evidence, that defendant was a danger, and that there were no conditions to mitigate that dangerousness. The court noted that it took judicial notice of the evidence that had been previously presented to the court through prior hearings.

¶ 8    Defendant timely appealed.

¶ 9                                    II. ANALYSIS

3

¶ 10        Defendant argues on appeal that the State should not have been allowed to file a

responsive petition to detain. We have already considered this issue in *People v. Kurzeja*, 2023

IL App (3d) 230434, ¶¶ 14-15. In *Kurzeja*, we stated that defendants who were arrested prior to

the implementation of bail reform

> "can either 'elect to stay in detention until such time as the previously set monetary
>
> security may be paid' (*People v. Rios*, 2023 IL App (5th) 230724, ¶ 16), or file a
>
> motion to modify. If defendant chooses the latter option, the State may file a
>
> responding petition. '[O]nce a defendant elects "to have their pretrial conditions
>
> reviewed anew" (*Rios*, 2023 IL App (5th) 230724, ¶ 16), the matter returns to the
>
> proverbial square one, where the defendant may argue for the most lenient pretrial
>
> release conditions, and the State may make competing arguments.' *People v. Jones*,
>
> 2023 IL App (4th) 230837, ¶ 23. 'This is analogous to when a change in the
>
> sentencing law occurs after a defendant has committed the offense—the defendant
>
> is given the opportunity to choose to be sentenced under that law that existed at the
>
> time of the offense or the newly enacted law.' *Rios*, 2023 IL App (5th) 230724, ¶
>
> 17." *Kurzeja*, 2023 IL App (3d) 230434, ¶ 14.

Based on this we found that the State was permitted to file a responsive petition if defendant chose

to file a motion to reopen the conditions of release. *Id.* ¶ 15. We adopt this reasoning, here, and

hold that the State was permitted to file a petition to detain in response to defendant's motion

seeking pretrial release.

¶ 11        Defendant further argues that the court erred in finding that there were no conditions to

mitigate his dangerousness, specifically pointing to the exhibits he offered at the hearing. We

consider factual findings for the manifest weight of the evidence, but the ultimate decision to

grant or deny the State's petition to detain is considered under an abuse of discretion standard. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. Under either standard, we consider whether the court's determination is arbitrary or unreasonable. *Id.*; see also *People v. Horne*, 2023 IL App (2d) 230382, ¶ 19.

¶ 12     Everyone charged with an offense is eligible for pretrial release, which may only be denied in certain situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2022). The State must file a verified petition requesting the denial of pretrial release. *Id.* § 110-6.1. The State then has the burden of proving by clear and convincing evidence (1) the proof is evident or presumption great that defendant committed a detainable offense, (2) defendant poses a real and present threat to any person, persons, or the community or is a flight risk, and (3) no conditions could mitigate this threat or risk of flight. *Id.* § 110-6.1(e). When determining a defendant's dangerousness and the conditions of release, the statute includes a nonexhaustive list of factors the court can consider. *Id.* §§ 110-6.1(g), 110-5.

¶ 13     Here, the evidence presented indicated that defendant killed his mother and posed a threat to his sister. While defendant indicated that he had bettered himself in jail, he continued to have disciplinary issues, both of a violent nature and which indicated that he would not listen to authority. One of these incidents resulted in an inmate in the hospital and additional charges against defendant. It was not against the manifest weight of the evidence for the court to find that any conditions, including home monitoring, would prevent defendant from continuing to be a threat. Therefore, the court did not abuse its discretion in granting the State's petition.

¶ 14                                III. CONCLUSION

¶ 15     The judgment of the circuit court of Du Page County is affirmed.

¶ 16     Affirmed.

¶ 17    PRESIDING JUSTICE McDADE, dissenting:

¶ 18    I dissent from the decision of the majority affirming the circuit court's grant of the State's petition to deny pretrial release for this defendant.

¶ 19    At issue in this case is not defendant's guilt or innocence of the charged counts of first degree murder. The question here is what conditions, if any, would allow this defendant to be released into the community until his trial by mitigating any real danger he poses to individual persons or to the community and/or inhibiting any risk of flight to avoid prosecution. As has apparently become commonplace in these hearings in the circuit court, the State in this case presented no evidence at all regarding the third element of section 110-6.1(e). Rather, the State presented evidence on the first two elements and then merely presented an unsupported legal conclusion on the third element. Even assuming that the State met its burden of proof on the second element, it does not automatically follow that the third element has also been proven. The legislature has specifically required that the State prove, by clear and convincing evidence, that "no conditions could mitigate this threat or risk of flight." Id. § 110-6.1(e). Even though it is not the defendant's burden to show that conditions exist that mitigate any threat that he or she poses under the statute, one can easily see why defendants raise specific conditions at these hearings, like James did in this case, in defense of any supposed risk they pose—the circuit courts have been allowing the State to completely bypass the legislatively required burden of proof it has on the third element. Defendants have essentially been forced to carry the burden of disproving a presumption that does not exist under the statute.

¶ 20    I am mindful of the circuit courts' time-strapped dockets and the difficulties associated with the legislature requiring more for bond hearings than was previously required. But courts must adapt when the legislature requires us to do so. The "old way of doing things" simply no

6

longer suffices for bond hearings. The State cannot be allowed to ignore its statutorily mandated burden on the third element, especially when the statutory scheme carries an explicit presumption in favor of release. See 725 ILCS 5/110-2(a) (West 2022).

¶ 21        I emphasize that I am not commenting at all on whether conditions do exist that could mitigate the threat allegedly posed by the defendant in this case. Perhaps there are none. But the statute puts the burden of proving that no such conditions exist squarely on the State. When the State provides no evidence on that issue at the hearing and the circuit court denies pretrial release anyway, a decision by a reviewing court that affirms the circuit court's decision is inconsistent with the statutory scheme's explicit requirements and purpose and is therefore incorrect, no matter how dangerous or violent the particular defendant may in fact be.

¶ 22        Under the circumstances of this case, I would hold that because the State failed to meet its burden on the third element of section 110-6.1(e), the circuit court abused its discretion when it granted the State's motion to deny pretrial release.